UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:11-cr-195-SEB-TAB-1 |
| | ) | |
| DAVID A. THORNTON, | ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

On June 6, 2013, the Court conducted a hearing on a petition alleging a violation of supervised release as follows:

1. Defendant David A. Thornton was advised of the nature of the violations alleged against him and acknowledged receipt of the notice of said allegations.

2. Thornton stipulated that he committed Violations 5 and 6, as set forth in the Petition for Warrant or Summons for an Offender Under Supervision, filed with the Court on June 3, 2013 as follows:

| Violation Number | Nature of Noncompliance |
|---|---|
| 5. | "The defendant shall be monitored by Radio Frequency (RF) Monitoring for a period of 4 months, to commence immediately, and shall abide by all technology requirements. The defendant shall pay all or part of the costs of participation in the program as directed by the court or probation officer. This form of location monitoring technology shall be utilized to monitor the following restriction on the defendant's movement in the community as well as other court-imposed conditions of release: the defendant shall be restricted to his residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court-ordered obligations; or other activities as pre-approved by the probation officer." |

As previously reported to the Court, on January 11, 2013, the offender reported to the probation office as instructed with his pay stubs for December 2012. The hours on his pay stubs were inconsistent with the number of hours he was permitted to leave for employment purposes. Mr. Thornton admitted leaving his residence without the approval of the probation officer on December 26, and 31, 2012, to go out with his friends, instead of going to work. On February 2, 2013, the offender was late coming home from his job. It was determined he went to the residence of a female acquaintance after leaving work and did not report home as required. An incident occurred at this residence between his girlfriend and the woman he was with. The offender said his tires were slashed and he had to find alternative transportation home.

Since Mr. Thornton appeared before the Court on February 28, 2013, additional detailed information regarding his work hours was received. It reveals the offender worked less than a full shift, but did not return home until his normal scheduled time. This occurred on January 4, 29, 30, 31, February 5, March 1, and 12, 2013.  On January 9, and 10, 2013, Mr. Thornton did not report for employment at all, but left his residence as a normally scheduled work day. His whereabouts during this time is unknown.

On January 18, 25, February 4, 8, 15, 19, March 1, and 15, 2013, it took Mr. Thornton an average of 30 minutes to arrive at his place of employment from the time he left his residence around 3:00 p.m. Upon leaving his employment at approximately 11:30 p.m., the travel time increased to an average of one hour and 45 minutes. His whereabouts during this time is unknown.

On March 10, 2013, Mr. Thornton or one of his friends posted a picture to his Facebook page of him drinking at what appears to be a bar. Both he and one of his friends joke about how many minutes he had before he needed to be home. The offender was confronted with this information and it was explained to him not only was he violating the terms of his location monitoring program, he was thumbing his nose at the probation officer by posting it for everyone to read. He acknowledged violating the terms of the program, but seemed more concerned his Facebook page was being reviewed by the probation officer.

      6.      "The defendant shall reside for a period of up to 180 days at a Residential Reentry Center (RRC) as directed by the probation officer and shall observe the rules of that facility."

On May 24, 2013, it came to the attention of Volunteers of America (VOA) staff that Mr. Thornton had been using vacation time at his employment. They requested copies of his time cards for the time he resided in their facility. These records revealed he worked less than a full shift, but did not return to the VOA until his normal scheduled return time. The dates on which this occurred were March 27, April 25, May 1, 7, 15, 21, and 22, 2013.

Mr. Thornton typically left his employment between the hours of 11:00 p.m. and 11:30 p.m. Of the forty days he left the VOA for employment, only on eight occasions did he work later than 11:40 p.m., and he never returned to the facility before 1:00 a.m. His whereabouts during these times is unknown.

Since Mr. Thornton's arrival at the VOA on March 28, 2013, he has not made a subsistence payment. It is a requirement of the program he pay twenty-five percent of his gross income. An incident report was filed on three occasions for non-payment. He is paid $11.50 per hour and has been employed full time since he arrived at the VOA.

On May 12, 2013, an incident report was filed against Mr. Thornton for possessing a phone and charger. The offender admitted possessing the phone, and when it was confiscated he stated to staff, "what is wrong with you, this is just a game to you."

3.      The highest grade of Violation (Violations 5 and 6) is alleged as a Grade C violation, pursuant to U.S.S.G. § 7B1.1(a).

4.      Thornton's criminal history category is V.

5.      The term of imprisonment applicable upon revocation of Thornton's supervised release, therefore, is 7-13 months' imprisonment.  *See*, U.S.S.G. § 7B1.4(a).

6.	Thornton waived his right to a preliminary hearing and admitted to the Court that he violated the terms of his supervised release. The parties presented an agreed upon recommendation to the Court concerning the appropriate disposition of the case.

7.	The Court adopts the agreed upon recommendation of the parties and orders that Thornton is therefore **REVOKED** and he is sentenced to the custody of the Attorney General or his designee for a period of 13 months.   The service of the sentence shall begin immediately. The Magistrate Judge recommends that Thornton be sent to the lowest security BOP facility as close to Indianapolis as possible.   At the conclusion of Thornton's term of confinement, he shall not be subject to supervised release.

The Magistrate Judge requests that Jason Phillips, U. S. Parole and Probation officer, prepare for submission to the Honorable Sarah Evans Barker, Judge, as soon as practicable, a supervised release revocation judgment, in accordance with these findings of facts, conclusions of law and recommendation.

Counsel for the parties and Thornton stipulated in open court waiver of the following:

Counsel for the parties and Thornton entered the above stipulations and waivers after being notified by the undersigned Magistrate Judge that the District Court may refuse to accept the stipulations and waivers and conduct a revocation hearing and may reconsider the Magistrate Judge's Report and Recommendation, including making a *de novo* determination of any portion of the Report or specified proposed findings or recommendation upon which he may reconsider.

**WHEREFORE**, the U. S. Magistrate Judge **RECOMMENDS** the Court adopt the above report and recommendation revoking Thornton's supervised release and the sentence imposed of imprisonment of 13 months in the custody of the Attorney General or his designee. There shall be no term of supervised release at the conclusion of Thornton's term of incarceration. Service of Thornton's term of imprisonment is to begin immediately.

**IT IS SO RECOMMENDED** this 14th day of June, 2013.

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

Barry D. Glickman
Assistant United States Attorney

William H. Dazey, Jr.
Indiana Community Federal Defender

U. S. Parole and Probation

U. S. Marshal